# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                       )
CHICAGO INSURANCE COMPANY,             )
                                       )
                Plaintiff,             )
                                       )
        v.                             )        Civil Action No. 12-2068 (ABJ)
                                       )
PAULSON & NACE, PLLC, *et al.*,        )
                                       )
                Defendants.            )
_____)

## MEMORANDUM OPINION

In this case, an insurance carrier seeks a declaratory judgment holding that it is not bound to cover the costs of a legal malpractice action brought against a District of Columbia law firm and two of its attorneys. Invoking this Court's diversity jurisdiction, plaintiff Chicago Insurance Company ("CIC") brings this action against defendants Paulson & Nace, PLLC ("Paulson & Nace"), Barry J. Nace, Gabriel Assaad, and Sarah Gilbert. Paulson & Nace is a law firm at which attorney Barry J. Nace practices. Gabriel Assaad, also an attorney, was formerly an associate at Paulson & Nace.[1] Sarah Gilbert is a former Paulson & Nace client. In July 2007, CIC issued a professional liability insurance policy to Paulson & Nace and Barry J. Nace, which defendant Nace renewed for the July 2008–July 2009 period.

On November 1, 2013, the Circuit Court for the City of Richmond, Virginia awarded defendant Gilbert a $1.75 million legal malpractice judgment against the attorney defendants. According to CIC, the attorney defendants should have been aware of defendant Gilbert's

_____

[1] The Court will refer to Paulson & Nace, Barry J. Nace, and Gabriel Assaad collectively as the "attorney defendants."

potential claim before the inception of the CIC–Nace insurance policy, and they failed to notify CIC as required by the policy. Therefore, CIC seeks a declaratory judgment from this Court that it has no obligation to indemnify the attorney defendants for the damages, costs, or fees incurred in connection with the Gilbert legal malpractice lawsuit.

After completing discovery in this action, defendants Barry J. Nace, Paulson & Nace, and Sarah Gilbert, and plaintiff CIC all moved for summary judgment.[2] Defendants contend that Virginia substantive law should apply in this diversity case, and that Virginia law precludes judgment for CIC. They further argue that the attorney defendants were not aware of defendant Gilbert's potential claim until 2009, and that CIC has waived its defense to coverage, or in the alternative, that CIC is estopped from asserting it because CIC did not reserve its rights until 2012. Plaintiff maintains that District of Columbia law applies to this case, that the attorney defendants reasonably should have known that defendant Gilbert had a potential claim against them before the inception of the insurance policy, and that the doctrines of waiver and estoppel do not bar its defense to coverage.

The Court finds that District of Columbia law applies to this case, that the attorney defendants should have known of defendant Gilbert's potential claim before they even applied for the CIC insurance policy, that the attorney defendants failed to notify CIC of the potential

---

2       Defendant Gilbert has joined the briefing of defendants Barry J. Nace and Paulson & Nace in full. *See* Def. Sarah Gilbert's Resp. to Defs. Paulson & Nace, PLLC's & Barry J. Nace's Mem. of P. & A. in Supp. of Their Mot. for Summ. J. at 1 (joining motion for summary judgment) [Dkt. # 21]; Def. Sarah Gilbert's Resp. to Pl.'s Mot. for Summ. J. & Joinder of Opp. Filed by Defs. at 2 (joining opposition to CIC's motion for summary judgment) [Dkt. # 39]. Defendant Assaad has joined only the opposition to CIC's motion for summary judgment. Def. Gabriel Assaad's Joinder of Defs. Paulson & Nace, PLLC & Barry Nace's Opp. to Pl.'s Mot. for Summ J. at 1 [Dkt. # 38]. For the sake of simplicity, the Court will refer to these filings as having been submitted by "defendants."

claim, and that CIC's defense to coverage is not barred by the doctrines of waiver or estoppel. Therefore, the Court will grant plaintiff's motion for summary judgment and deny defendants' motion.

## BACKGROUND

### I. Factual Background[3]

#### A. *The Gilbert Medical Malpractice Lawsuit*

On July 28, 2004, Sarah Gilbert underwent spinal surgery to correct her scoliosis, and the surgery rendered her a paraplegic. Statement of Material Facts in Supp. of Chi. Ins. Co.'s Mot. for Summ. J. ¶ 3 [Dkt. # 18] ("CIC SOF"). Ms. Gilbert was a minor at the time. *Id.* ¶ 4. In December 2004, her parents, Richard and Rosie Gilbert, retained defendant Barry J. Nace and his law firm, defendant Paulson & Nace, to pursue a claim of medical malpractice and negligence on behalf of their daughter in Virginia. *Id.* Defendant Gabriel Assaad, then an associate attorney at Paulson & Nace who, unlike Nace, was admitted to the Virginia bar, *see* Ex. W to CIC SOF, Decl. of Gabriel Assaad ¶ 3 [Dkt. # 18-23]; Ex. W to CIC SOF, Aff. of Barry J. Nace ¶ 4 [Dkt. # 18-23], assisted in the representation of Ms. Gilbert.[4] *See* Ex. G to CIC SOF at 2 [Dkt. 18-7]

---

3     The parties have submitted four statements of material fact. Statement of Material Facts Not in Dispute, Defs. Paulson & Nace, PLLC's & Barry J. Nace, Esq.'s Mot. for Summ. J. [Dkt. # 14-2]; Statement of Material Facts in Supp. of Chi. Ins. Co.'s Mot. for Summ. J. [Dkt. # 18]; Pl.'s Resp. in Opp. to the Nace Defs.' Statement of Material Facts not in Dispute & Pl.'s Additional Statement of Undisputed Material Facts in Supp. of Pl.'s Opp. [Dkt. # 23]; Defs. Paulson & Nace, PLLC, & Barry Nace's Statement of Genuine Issues of Material Fact Necessary to Be Litigated [Dkt. # 24-1]. Except where noted, all of the facts in this section are undisputed.

4     Mr. Assaad is no longer an associate with Paulson & Nace. *See* Paulson & Nace, PLLC & Barry J. Nace Answer & Grounds for Relief ¶ 5 [Dkt. # 5].

(transcript of Virginia court proceeding indicating defendant Assaad's appearance on behalf of defendant Gilbert).

The attorney defendants filed a complaint in the Gilbert medical malpractice lawsuit on July 24, 2006, in the Circuit Court for the City of Richmond. Statement of Material Facts Not in Dispute, Defs. Paulson & Nace, PLLC's & Barry J. Nace, Esq.'s Mot. for Summ. J. ¶ 3 [Dkt. # 14-2] ("Nace SOF"). The statute of limitations on Ms. Gilbert's claim expired four days later, on July 28, 2006.[5] CIC SOF ¶¶ 5–6. The court dismissed this complaint without prejudice on February 26, 2007, because the complaint did not identify Richard and Rosie Gilbert as Sarah Gilbert's "next friend," as required by Virginia law. Nace SOF ¶ 6; *see also* Va. Code § 8.01-8 (2013) ("Any minor entitled to sue may do so by his next friend. Either or both parents may sue on behalf of a minor as his next friend."). In the meantime, though, the attorney defendants recognized their error and on October 25, 2006, they filed a second complaint in the same court with a style that comported with Virginia law. Nace SOF ¶ 7. On June 18, 2007, the Virginia judge ruled from the bench and dismissed the second complaint with prejudice as untimely. Ex. G to CIC SOF at 31–32, 44 (transcript of court proceedings). Defendant Gabriel Assaad represented Ms. Gilbert at that hearing and acknowledged the court's ruling against his client. *Id.* at 32 ("MR. ASSAAD: Your Honor, I understand your ruling. *Note my exception to it.*")

---

5    The attorney defendants state that "it is alleged" that the statute of limitations on Sarah Gilbert's claim ran out on July 28, 2006, Nace SOF ¶ 4, but a Virginia court ultimately dismissed the claim as untimely for precisely this reason. *See* Ex. H to CIC SOF at B93–B94 [Dkt. # 18-8] (order of the Circuit Court of the City of Richmond dismissing Ms. Gilbert's medical malpractice claim as untimely).

(emphasis added). The court subsequently issued an order memorializing its ruling on August 3, 2007. Ex. H to CIC SOF at B93-B95 [Dkt. # 18-8].

The attorney defendants' attempts to appeal that ruling were unsuccessful, and the Supreme Court of Virginia finally disposed of Sarah Gilbert's untimely medical malpractice claim on December 15, 2009. Nace SOF ¶ 13. In addition, the attorney defendants nonsuited the remaining claims of Richard and Rosie Gilbert, which had not been dismissed, on May 19, 2009. *Id.* ¶ 11. On January 29, 2011, counsel for defendant Gilbert in this case, Herman Aubrey Ford, III, informed defendant Nace by letter that he would be taking over representation of Richard and Rosie Gilbert at their request. Ex. AA to Mem. of P. & A. in Supp. of CIC's Resp. in Opp. to the Nace Defs.' Mot. for Summ. J. at 1–2 [Dkt. # 23-3].

   *B.  The CIC Insurance Policy*

On July 18, 2007, after the Virginia court had ruled from the bench and dismissed the Gilbert case as untimely, defendant Barry J. Nace applied for a "claims-made" professional liability insurance policy from plaintiff, Chicago Insurance Company.[6] CIC SOF ¶ 14. At the time, the attorney defendants held a policy from the Philadelphia Insurance Company that was set to expire July 24, 2007. Defs. Paulson & Nace, PLLC, & Barry Nace's Reply to Pl.'s Opp. to their Mot. for Summ. J. at 19 [Dkt. # 29] ("Defs.' Reply"); Ex. DD to Pl.'s Sur-Reply in Supp. of CIC's Opp. to Nace Defs.' Mot. for Summ. J. at PIIC 010 [Dkt. # 32-1]. Plaintiff issued a "Lawyers Professional Liability Policy" to the attorney defendants for the July 24, 2007–July 24,

---

6    A "claims-made" policy is one in which "the insurer agrees to indemnify the insured party against all claims made during the period of the policy, regardless whether the incident that gave rise to the claim occurred during the policy term." *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 365 F.3d 1104, 1105 (D.C. Cir. 2004), citing Black's Law Dictionary 809 (7th ed. 1999).

2008 period, and defendant Barry J. Nace renewed that policy for the July 24, 2008–July 24, 2009 period. Nace SOF ¶¶ 14, 15.

In the application for the initial policy, Mr. Nace answered "no" to the following question: "Having inquired of all partners, officers, owners and employed lawyers, are there any circumstances which may result in a claim being made against the firm, its predecessors or any current or past partner, officer, owner or employed lawyer of the firm?" CIC SOF ¶ 15.

Additionally, the 2008–2009 insurance agreement provided as follows:

**INSURING AGREEMENTS**

**I.     COVERAGE**

The Company will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as **Damages** for **Claims** first made against the **Insured** and reported to the Company during the **Policy Period** or Extended Reporting Period, as applicable, arising out of any negligent act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** for others by an **Insured** covered under this policy. <u>Provided always that such **Professional Services** or **Personal Injury** happen</u>:

    A. during the **Policy Period**; or

    B. <u>prior to the **Policy Period** provided that prior to the effective date of the first Lawyers Professional Liability Insurance Policy issued by this Company to the **Named Insured** or **Predecessor in Business,** and continuously renewed and maintained in effect to the inception of this policy period</u>:

        1. the **Insured** did not give notice to any prior insurer of any such act, error, omission or **Personal Injury**;

        2. <u>the **Named Insured**, any partner, shareholder, employee, or where appropriate the **Named Insured's** management committee or any member thereof, had no reasonable basis to believe that the **Insured** had breached a professional duty or to **Reasonably Foresee** that a **Claim** would be made against the **Insured**</u>; and

3. there is no prior policy or policies which provide insurance (including any Automatic or Optional Extended Reporting Period or similar provision) of such policies for such **Claim**, unless the available limits of liability of such prior policy or policies are insufficient to pay any **Claim**, in which event this policy will be specific excess over any such prior coverage, subject to this policy's terms, limits of liability, exclusions and conditions.

CIC SOF ¶ 24 (emphasis added by CIC). The agreement further defined the term "reasonably foresee" as follows:

**Reasonably Foresee(n)** means:

1. **Claims** or incidents reported to any prior insurer;

2. unreported **Claims** or suits of which any **Insured** had received notice prior to the effective date of the first policy with the Company;

3. incidents or circumstances that involve a particular person or entity which an **Insured** knew might result in a **Claim** or suit prior to the effective date of the first policy issued by the Company to the **Named Insured**, and which was not disclosed to the Company.

*Id.* ¶ 26 (emphasis added by CIC).

The attorney defendants did not alert CIC to Sarah Gilbert's potential legal malpractice claim until May of 2009. CIC SOF ¶ 18. At that time, the attorney defendants informed CIC that the "alleged error" with respect to defendant Gilbert had occurred in 2008. *Id*. The attorney defendants never informed their prior insurer, the Philadelphia Insurance Company, of Ms. Gilbert's potential claim. *See* Defs.' Reply at 23–24.

CIC claims that it issued a general reservation of rights letter to the attorney defendants in July 2009, shortly after defendant Nace alerted plaintiff to defendant Gilbert's potential claim. CIC SOF ¶ 20. This letter acknowledged that CIC was on notice of the potential claim and that

CIC would investigate it, but further stated: "[n]othing contained herein constitutes a waiver of any of our potential rights and defenses. CIC reserves all of its rights under the policy and, in particular, reserves the right to assert coverage or policy defenses, if any, at such time when pertinent facts and circumstances or their significance are disclosed or otherwise become known to CIC." *Id.* ¶ 21. Defendant Nace claims that he never received this letter. Pl.'s Resp. in Opp. to the Nace Defs.' Statement of Material Facts not in Dispute & Pl.'s Additional Statement of Undisputed Material Facts in Supp. of Pl.'s Opp. ¶ 28 [Dkt. # 23] ("CIC SOF Resp.").

CIC retained a law firm to represent the attorney defendants against defendant Gilbert's potential malpractice action. Defs. Paulson & Nace, PLLC, & Barry Nace's Statement of Genuine Issues of Material Fact Necessary to Be Litigated ¶ 22 [Dkt. # 24-1]. On March 8, 2010, CIC received several litigation documents from the underlying Gilbert medical malpractice action. Nace SOF ¶¶ 19–20. CIC did not review these records, however, and did not discover the timing of the dismissal of the Gilbert medical malpractice action until November 2011. CIC SOF ¶ 22. CIC asserts that it did not review the documents it received in March 2010 for a timeliness issue because it relied on defendant Nace's representation that the "alleged error" had occurred in 2008, and because defendant Gilbert had not yet filed a claim. CIC SOF Resp. at 17. Nevertheless, CIC's own records indicate that, starting in 2009, its claims adjusters repeatedly noted that CIC had "insufficient facts" about the potential Gilbert claim and needed more information. Ex. Y to Mem. of P. & A. in Supp. of CIC's Resp. in Opp. to the Nace Defs.' Mot. for Summ. J. at CIC 000493–95 [Dkt. # 23-1].

On January 13, 2012, CIC sent letters to defendants Nace and Assaad stating that "CIC reserves its rights to deny coverage [of the potential Gilbert claim] to the extent that an insured

had a reasonable basis to believe that a professional duty had been breached or to 'reasonably foresee' that a 'claim' would be made against the insured before the CIC policy incepted on July 24, 2007." Ex. Q to CIC SOF at CIC 000022, CIC 000029. CIC further stated that it would "continue to monitor and investigate [the] potential [Gilbert] claim under a strict reservation of rights including, but not limited to, the right to bring a declaratory action seeking a declaration of no coverage or a rescission action." *Id.* at CIC 000017, CIC 000024–25. It is undisputed that CIC never sent a reservation of rights notice to defendant Gilbert. CIC SOF Resp. at 9.

### C. The Gilbert Legal Malpractice Action

Defendant Sarah Gilbert filed a legal malpractice claim against the attorney defendants in Richmond Circuit Court on March 13, 2012. Nace SOF ¶ 24. CIC received notice of this lawsuit on April 12, 2012, and issued a second reservation of rights letter to defendants Nace and Assaad on April 21, 2012. CIC SOF ¶¶ 29–30; Ex. T to CIC SOF at CIC 000444, CIC 000520. A jury awarded Ms. Gilbert $4,000,000, which the court reduced to $1,750,000 pursuant to Virginia law on November 1, 2013. Ex. A to Gilbert Resp. at 2 [Dkt. # 21-1].

## II. Procedural Background

On December 27, 2012, plaintiff CIC filed this diversity action seeking a declaratory judgment that it is not obligated to continue defending the attorney defendants.[7] Compl. at 1 [Dkt. # 1]. The parties conducted discovery, and defendants Paulson & Nace and Barry J. Nace filed a motion for summary judgment on August 8, 2013, [Dkt. # 14]. They argue that this case

---

7       CIC had previously filed a virtually identical action against the same defendants in the United States District Court for the Eastern District of Virginia, which was dismissed for lack of subject matter jurisdiction on December 3, 2012. Ex. 8 to Defs. Paulson & Nace, PLLC's & Barry J. Nace, Esq.'s Mot. for Summ. J. at 2 [Dkt. # 14-10].

is controlled by Virginia law, and that under Virginia law, plaintiff has waived or is estopped from asserting its defense to coverage. Defs. Paulson & Nace, PLLC's, and Barry J. Nace's Mem. of P. & A. in Supp. of Their Mot. for Summ. J. at 1 ("Defs.' Mem.") [Dkt. # 14-1]. Defendant Gilbert joined the defendants' motion on December 12, 2013. Def. Sarah Gilbert's Resp. to Defs. Paulson & Nace, PLLC's & Barry J. Nace's Mem. of P. & A. in Supp. of Their Mot. for Summ. J. at 1 [Dkt. # 21] ("Gilbert Resp.").

Plaintiff CIC filed a cross-motion for summary judgment on September 19, 2013, [Dkt. # 18], contending that District of Columbia ("District" or "D.C.") law applies to this action and that plaintiff is entitled to a declaratory judgment as a matter of law. Mem. of P. & A. in Supp. of CIC's Mot. for Summ. J. at 11–16 [Dkt. # 18] ("Pl.'s Mem."). Defendants Paulson & Nace and Barry J. Nace opposed that motion on December 12, 2013, [Dkt. # 24]. Defendant Assaad joined the opposition on March 18, 2014, [Dkt. # 38], and defendant Gilbert joined the opposition on March 26, 2014, [Dkt. # 39].

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a

genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

### I. District of Columbia law applies to this case.

As a preliminary matter, the Court must determine whether District of Columbia law or Virginia law applies in this case because a federal court sitting in diversity "must apply state law to the substantive issues before it." *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995), citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also*

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). To determine which state's substantive law to apply, a court must "apply the choice-of-law rules of the forum state." *Republican Nat'l Comm. v. Taylor*, 299 F.3d 887, 890 (D.C. Cir. 2002). Thus, District of Columbia choice-of-law principles will guide the Court's inquiry.

Under D.C. law, a court must "first determine whether there is a conflict" between D.C. and Virginia law in the case. *Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 882 (D.C. Cir. 1985), citing *Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C. 1970); *see also Capitol Specialty Ins. Corp. v. Sanford Wittels & Heisler, LLP*, 793 F. Supp. 2d 399, 407 (D.D.C. 2011). If no conflict exists, the court need not proceed with the choice of law analysis. *Eli Lilly*, 764 F.2d at 882.

Defendants appear to believe that a conflict exists between District and Virginia law.[8] Specifically, defendants point to the requirement under Virginia law that, when a liability insurer "discovers a breach of the terms or conditions of the insurance contract by the insured, the insurer shall notify the claimant or the claimant's counsel of the breach . . . within forty-five days" of either the insurer's discovery of the breach or of the claimant's claim. Va. Code § 38.2-2226 (2013). It is undisputed that District of Columbia law does not contain a similar notice requirement. It is also undisputed that plaintiff did not provide any notice to the claimant in this case, defendant Gilbert, until it filed its initial declaratory judgment action in the United States District Court for the Eastern District of Virginia. CIC SOF Resp. at 9.

---

8 Defendants do not address the first step of the D.C. choice of law analysis and therefore do not expressly contend that a conflict exists between District and Virginia law. Nevertheless, they strongly urge the Court to conduct the District's choice-of-law analysis and to conclude that Virginia law applies. Defs.' Mem. at 7–11.

Assuming without deciding that these circumstances present a conflict between D.C. and Virginia law,[9] the second step is to apply a multi-factor test that draws from the Restatement (Second) of Conflict of Laws and is referred to alternatively as the "governmental interest" or "more substantial interest" test.[10] *See Adolph Coors Co. v. Truck Ins. Exch.*, 960 A.2d 617, 620–21 (D.C. 2008) ("governmental interest"); *see also Eli Lilly*, 764 F.2d at 882 ("more substantial interest"). This test examines the following factors:

> (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; (5) the residence and place of business of the parties; and (6) the principal location of the insured risk.

*Adolph Coors*, 960 A.2d at 620, citing Restatement (Second) of Conflict of Laws §§ 188, 193 (1971).

Taken together, these factors overwhelmingly indicate that District of Columbia law "controls the interpretation and enforcement" of the insurance contract at issue in this case. CIC is an Illinois company that issued an insurance policy to the attorney defendants in the District of

---

9       Plaintiff argues that the Virginia notice requirement is "procedural," not substantive, and therefore that it "cannot and should not be enforced" by this Court. Mem. of P. & A. in Supp. of CIC's Resp. in Opp. to the Nace Defs.' Mot. for Summ. J. at 17 [Dkt. # 23] ("Pl.'s Opp."). But neither plaintiff nor defendants have conducted the *Erie* analysis that would determine whether a federal court could or should apply this provision of Virginia law. *See Burke v. Air Serv. Int'l, Inc.*, 685 F.3d 1102, 1107 (D.C. Cir. 2012) ("The Supreme Court has evolved a set of tests to determine whether a law is substantive or procedural for *Erie* purposes."); *see also Erie*, 304 U.S. 64. Plaintiff also contends that, even if Virginia law applied in this case, this provision of the Virginia Code would not be relevant because plaintiffs do not claim that the attorney defendants "breached" the policy, but rather "fail[ed] to perform a condition precedent" to coverage. Pl.'s Opp. at 24–25. The Court need not address either of these arguments because it finds that District of Columbia law applies in this case.

10      The insurance contract itself appears to be silent on the choice of law question, *see* Ex. L to CIC SOF [Dkt. 18-12], and none of the parties alleges otherwise.

13

Columbia. Defs.' Mem. at 10–11. Barry J. Nace is a resident of the District, and Paulson & Nace is organized under the laws of the District of Columbia, engaged in the practice of law in the District, with its principal place of business in the District. *Id.* at 10; CIC SOF ¶ 37. Therefore, the place of contracting and negotiation, the location of the subject matter of the contract, and the principal location of the insured risk (the law firm and its lawyers) is the District of Columbia. *See* Defs.' Mem. at 10. Moreover, while the legal action underlying the coverage dispute was filed in Virginia, the subject matter of the insurance contract, i.e. the attorney defendants' professional activities, was located in the District. *Id.* And despite defendants' insistence to the contrary, the question here is what law governs the insurance contract between CIC and the attorney defendants, and not what law governs the legal malpractice claim underlying this case.[11] *See* Defs.' Mem. at 10–11. Thus, after applying the D.C. choice of law analysis, the Court concludes that the law governing the attorney defendants' insurance contract with CIC is the law of the District of Columbia.

---

11    The Court further notes that, when before the United States District Court for the Eastern District of Virginia, the attorney defendants insisted that the Virginia federal court "[did] not have *in personam* jurisdiction arising out of" the insurance contract because the contract "[n]egotiations took place in Washington, D.C., the contract, which was delivered in Washington, D.C., is subject to Washington, D.C. law interpretation, and any performance or misrepresentation alleged in the Complaint occurred in Washington, D.C." Ex. V to CIC SOF at 2, 5 [Dkt. # 18-22] (attorney defendants' memorandum in support of their motion to dismiss CIC's complaint in the Virginia federal court). The attorney defendants attempt to explain their apparent reversal of position by arguing that defendant Gilbert is nevertheless "entitled to the protections of Virginia law." Defs.' Reply at 12. But as the attorney defendants themselves explained to the Virginia federal court, "[t]he only issue before the Court in the present action is the insurance contract, not the underlying tort claim," Ex. V to CIC SOF at 5, and that contract is governed by the laws of the District.

**II.     The insurance policy does not obligate CIC to defend or indemnify the attorney defendants in the Gilbert legal malpractice case.**

Applying District of Columbia law, the Court concludes that the attorney defendants failed to report Ms. Gilbert's potential legal malpractice claim to CIC on a timely basis, and that CIC is therefore not obligated to defend or indemnify them against those claims.  The Court finds that the attorney defendants reasonably should have known about defendant Gilbert's potential claim prior to the July 24, 2007 inception of the CIC policy, and therefore, they did not satisfy an essential prerequisite to coverage of her claim.  Second, the Court finds that although CIC could – and perhaps should – have reserved its rights with respect to the defense it asserts in this case (the "prior knowledge" defense) much sooner, CIC did not waive this defense, and it is not estopped from asserting it here.

   *A.   The attorney defendants had a reasonable basis to believe that they had breached a professional duty to defendant Gilbert prior to the inception of the CIC liability insurance policy.*

In the District of Columbia, "[a]n insurance policy is a contract between the insured and the insurer, and in construing it [a court] must first look to the language of the contract." *Travelers Indem. Co. of Ill. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 986 (D.C. 2001), quoting *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C. 1999).  "'Where insurance contract language is not ambiguous . . . a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence.'" *Id.*, quoting *In re Corriea*, 719 A.2d 1234, 1239 (D.C. 1998).  Moreover, "notice provisions in insurance contracts are deemed 'of the essence of the contract' and are given effect 'to promote the efficient and economic liability insurance administration.'" *Columbia Cas. Co. v. Columbia*

*Hosp. for Women*, 633 F. Supp. 697, 699 (D.D.C. 1986), quoting *Diamond Serv. Co. v. Utica Mut. Ins. Co.*, 476 A.2d 648, 652 (D.C. 1984).

Looking to the language of the contract here, the 2008–2009 liability insurance policy obligated CIC to cover incidents that took place prior to the inception of the policy as long as it received appropriate notice of potential claims. Specifically, the policy provided coverage if, "prior to the effective date of the first . . . Policy issued by [CIC] to the Named Insured . . . the Named Insured, . . . [or any] employee . . . had no reasonable basis to believe that the Insured had breached a professional duty or to Reasonably Foresee that a Claim would be made against the Insured." CIC SOF ¶ 24. The policy further defined "Reasonably Foresse(n)" to include "incidents or circumstances that involve a particular person or entity which an Insured knew might result in a Claim or suit prior to the effective date of the first policy . . . and which was not disclosed to [CIC]." *Id.* ¶ 26.

The parties do not dispute the meaning of the language of the contract itself, but rather the date on which the attorney defendants should have notified CIC of defendant Gilbert's potential claim. CIC argues that the attorney defendants had a "reasonable basis to believe" that they had "breached a professional duty," or to "Reasonably Foresee" that defendant Gilbert would bring a claim, as early as February 26, 2007, when the court dismissed the first medical malpractice complaint for an improper style, and certainly no later than June 18, 2007, when the court dismissed the second medical malpractice complaint from the bench with prejudice. Pl.'s Mem. at 24. The attorney defendants counter that there was no reason to believe they had breached a professional duty with respect to defendant Gilbert because the error leading to the dismissal was a mere "misnomer." Defs.' Paulson & Nace, PLLC, & Barry Nace's Opp. to Pl.'s

Mot. for Summ. J. at 15–16 [Dkt. # 24] ("Defs.' Opp."). Therefore, they claim, they could not reasonably have foreseen defendant Gilbert's claim prior to the inception of the CIC policy. *Id.* at 15. They further contend – without citing any relevant authority[12] – that CIC is required to provide expert testimony to establish when they reasonably could have foreseen that defendant Gilbert would bring a legal malpractice claim. *Id.* at 13–14.

The Court finds that the attorney defendants had a reasonable basis to believe that they had breached a professional duty to defendant Gilbert no later than the date of the Virginia court's ruling on June 18, 2007, and that expert testimony is not necessary in this case. Whether the attorney defendants had a "reasonable basis to believe" that a breach of professional duty had occurred is an objective inquiry that asks what a reasonable attorney would have done in the same circumstances.[13] *See Capitol Specialty*, 793 F. Supp. 2d at 411 ("[T]he correct standard is the objective, reasonable attorney one, not whether the lawyer in fact had a subjective belief that a malpractice action was probable."); *see also Colliers Lanard & Axilbund v. Lloyds of London*,

---

12      Rather, defendants cite two cases that hold that expert testimony is required to establish whether legal malpractice has occurred, *O'Neil v. Bergan*, 452 A.2d 337 (D.C. 1982); *Seaward Int'l, Inc. v. Price Waterhouse*, 391 S.E.2d 283 (1990), and one case applying Pennsylvania law, *Foster v. Westchester Fire Ins. Co.*, No. 09-1459, 2012 WL 2402895, *1 (W.D. Pa. June 26, 2012).

13      The Court notes that, under the definition provided in the CIC insurance contract, whether the attorney defendants "reasonably foresaw" defendant Gilbert's claim appears to be a subjective inquiry, as it looks to "incidents or circumstances . . . which an Insured *knew* might result in a Claim or suit." CIC SOF ¶ 24 (emphasis added); *see Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 237 (3d Cir. 2006) (identifying the subjective and objective elements of a liability insurance contract). But because the policy is worded in the alternative, requiring that an insured have "no reasonable basis to believe that [it] had breached a professional duty *or* to Reasonably Foresee" a future claim, CIC SOF ¶ 24 (emphasis added), what the attorney defendants subjectively knew at the inception of the CIC insurance contract does not control when, objectively, they should have recognized the professional error.

458 F.3d 231, 237 (3d Cir. 2006) ("[W]e conclude that this part of the exclusion gives rise to an objective test: whether a reasonable professional in the insured's position might expect a claim or suit to result."). "[T]he question whether the insured has acted reasonably becomes a question of law only when reasonable persons can draw but one inference." *Travelers Indem. Co.*, 770 A.2d at 991. Moreover, under D.C. law, an expert witness is required to establish the standard of care or the contractual duty "when 'the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson,'" *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 225 (D.C. Cir. 2011), quoting *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007) (citation and internal quotation marks omitted), but that is not the case here. *See also Daskalea v. District of Columbia*, 227 F.3d 433, 445 (D.C. Cir. 2000) (same).

Here, the attorney defendants filed a medical malpractice complaint on behalf of defendant Gilbert in 2006 that did not comport with the Virginia Code requirement that a minor must sue by a "next friend." *See* Ex. B to CIC SOF at 1; *see also* Va. Code § 8.01-8. The statute of limitations on defendant Gilbert's claim expired before the attorney defendants were able to correct their mistake, and thus their error became fatal to defendant Gilbert's claims. *See* Ex. G to CIC SOF at 31–32, 44 (transcript of hearing in which Virginia judge dismissed Gilbert's claims with prejudice). The attorney defendants' efforts to minimize the seriousness of their naming mistake are unavailing: not only did this last-minute "misnomer" cost defendant Gilbert the right to bring her medical malpractice claim in court, but also it led a Virginia jury to find the attorney defendants liable for legal malpractice. *See* Ex. A to Gilbert Resp. at 2. The Court finds that under these circumstances, "reasonable persons can draw but one inference": that the

attorney defendants had a "reasonable basis to believe" that they had "breached a professional duty" to defendant Gilbert no later than June 18, 2007, when the Virginia judge dismissed her medical malpractice claims with prejudice. *See Capitol Specialty*, 793 F. Supp. 2d at 411 ("[T]he dismissal of a lawsuit because of attorney error would clearly put a lawyer on notice of the possibility of a malpractice claim.").

The Court further finds that this question is not "so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson." *Capitol Sprinkler*, 630 F.3d at 225; *see also Capitol Specialty*, 793 F. Supp. 2d at 411 (holding without expert testimony that attorneys who missed a filing deadline that caused a court to dismiss their clients' class action claims reasonably should have known that the clients had a potential malpractice claim against them); *Ross v. Cont'l Cas. Co.*, 420 B.R. 43, 50 (D.D.C. 2009) (holding without expert testimony that attorney's failure to timely file an answer, leading to a default judgment against the client, "might reasonably be expected to be the basis of a claim" under liability policy); *Minn. Lawyers Mut. Ins. Co. v. Hahn*, 355 F. Supp. 2d 104, 110–11 (D.D.C. 2004) (applying Virginia law and holding without expert testimony that attorneys reasonably should have known that a "[l]etter stating that an attorney ha[d] been 'authorized to institute legal proceedings for claims'" constituted notice of a claim for purposes of a professional liability insurance policy). Therefore, the attorney defendants reasonably should have known of defendant Gilbert's potential claim prior to the inception of the CIC policy.

*B. CIC did not waive its "prior knowledge" defense and is not estopped from asserting it here.*

Defendants contend that even if their notice to CIC of defendant Gilbert's potential claim was untimely, CIC has waived its "prior knowledge" defense or is estopped from asserting it because CIC investigated the potential claim for more than two years before reserving its rights. Defs.' Mem. at 19–20; Defs.' Opp. at 26–28.

Under District of Columbia law, "[w]aiver is an act or course of conduct by the insurer which reasonably leads the insured to believe that the breach will not be enforced." *Diamond*, 476 A.2d at 654. In other words, and in this context, "'an insurer undertaking the defense of an insured against a litigious assertion of an unprotected liability, without a disclaimer of contractual responsibility and a suitable reservation of rights, is foreclosed from thereafter taking refuge in the policy provisions exempting the liability from coverage.'" *Cincinnati Ins. Co. v. All Plumbing, Inc. Serv., Parts Installation*, CV 12-851 (CKK), 2013 WL 5665195, at *4 (D.D.C. Oct. 18, 2013), quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Aetna Cas. & Sur. Co.*, 384 F.2d 316, 318 (D.C. Cir. 1967); *see also Cont'l Cas. Co. v. Hartford Fire Ins. Co.*, 116 F.3d 932, 939 n.8 (D.C. Cir. 1997) (same). "Estoppel, on the other hand, generally results when an insurance company assumes the defense of an action or claim, with knowledge of a defense of non-liability under the policy . . . ." *Diamond*, 476 A.2d at 654. "[A]n insurer may be estopped from denying coverage," however, "only if its participation somehow prejudiced the insured by undermining his ability to defend himself." *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010).

Although it may be true that CIC should have uncovered the timing issue in this case earlier than it did, the Court finds that CIC's "prior knowledge" defense is not barred by the doctrines of waiver or estoppel. It is undisputed that CIC *could* have discovered the facts underlying its "prior knowledge" defense in March of 2010, NACE SOF ¶¶ 19–20, but it did not do so until November 2011, CIC SOF ¶ 22, and did not reserve its rights with respect to that defense until January 13, 2012.[14] Ex. Q to CIC SOF at CIC 000022, CIC 000029. But D.C. law required CIC to reserve its rights before "undertaking the defense" of the attorney defendants "against a litigious assertion of an unprotected liability." *See Cincinnati Ins. Co.*, 2013 WL 5665195, at *4. Given that defendant Gilbert did not file her legal malpractice claim until March 13, 2012, exactly three months *after* CIC reserved its "prior knowledge" defense, the timing of CIC's reservation of rights notice met this requirement of D.C. law. *See Cincinnati Ins. Co.*, 2013 WL 5665195, at *4.

Moreover, the twenty-two months that elapsed between the earliest date on which CIC could have become aware of its prior knowledge defense (March 8, 2010) and the date on which it issued its reservation of rights (January 13, 2012) did not prejudice defendants because CIC had taken no actions that "hampered or harmed" the defendants' "ability to defend [themselves]." *See Diamond*, 476 A.2d at 658. In *Diamond*, the court held that an insurance company had not foregone its coverage defenses when there was a "seven-month delay between

---

14      CIC asserts that, in July 2009, shortly after Nace notified it of defendant Gilbert's potential claim, it issued a general reservation of rights letter to the attorney defendants. CIC SOF ¶ 20. Defendant Nace contends that he never received that letter. CIC SOF Resp. at 15. This factual dispute is immaterial, however, because the Court finds that the timing of the January 2012 reservation of rights notice does not bar CIC from asserting its "prior knowledge" defense.

the time [the insurer] knew there was a good possibility it would withdraw" and the time it did withdraw, because the insurer had merely "advise[d] [the insured] on answering interrogatories and . . . file[d] an answer to the amended complaint." 476 A.2d at 656–57. Likewise, in *Capitol Specialty*, there was no prejudice when the insurer withdrew coverage nine months after receiving notice of the claim, having only "advised defendants that coverage [was] available for [their] claim" and "undert[aken] their defense in the Malpractice Action." 793 F. Supp. 2d at 412–13 & n.8. By contrast, in *Cincinnati Ins. Co.*, the court did find prejudice when the insurer "controlled the defense of the . . . action for approximately five months before disclaiming coverage and . . . undertook several important defensive actions," including removing the case to federal court, opposing a motion for class certification, and agreeing to stay the case pending resolution of a motion to remand. 2013 WL 5665195, at *5.

Again, and unlike the insurers in all of these cases, CIC reserved its rights with respect to its "prior notice" defense before defendant Gilbert even filed her complaint.[15] Moreover, the only actions CIC undertook prior to reserving its rights were to investigate defendant Gilbert's potential claim and to retain counsel to represent the attorney defendants. It is true that CIC continued to defend the attorney defendants through the conclusion of the Gilbert legal malpractice lawsuit, but the attorney defendants were undisputedly on notice of CIC's defense at

---

15    Defendant Gilbert asserts that it is "self-evident" that she has suffered prejudice in this case. But in the District of Columbia, "[a]n insurer's obligation to provide notification of its reservation of rights under an insurance policy is to the insured, not to the party seeking a judgment from the insured." *Cincinnati Ins. Co.*, 2013 WL 5665194, at *4. Further, defendant Gilbert has not offered any arguments or authority that would clarify her rights in this case under District of Columbia law. Therefore, the Court will not consider the issue of prejudice with respect to her.

that time. None of CIC's actions impeded the attorney defendants from obtaining their own counsel, or prevented defendants from negotiating settlement and avoiding a trial.

In their reply, defendants also contend that had CIC reserved its rights sooner, the attorney defendants would have "notif[ied] and pursu[ed] other potential insurers," including their immediately prior insurer, Philadelphia Insurance Company. Defs.' Reply at 23–24. But that policy expired in July 2007, and it is not clear that such a claim could have been successful, since the very earliest date CIC could have discovered its defense and notified the defendants was March 2010. *See* Ex. DD to Pl.'s Sur-Reply at PIIC 012, PIIC 027 [Dkt. # 32-1] (copy of the attorney defendants' Philadelphia Insurance Company policy stating that the insured could only purchase "Extended Reporting Period" coverage within sixty days after the termination of the policy period).

The Court cannot conclude, therefore, that CIC's actions prejudiced the attorney defendants or "undermin[ed] [their] ability to defend [themselves]." *See Athridge*, 604 F.3d at 629. Nor were CIC's actions "a course of conduct . . . which reasonably [led] the insured to believe that the breach [would] not be enforced." *Diamond*, 476 A.2d at 654. Therefore, CIC's "prior knowledge" defense is not barred by the doctrines of waiver or estoppel, and the Court will grant its motion for summary judgment.

## CONCLUSION

The Court finds that District of Columbia law applies in this case, that the attorney defendants failed to timely report defendant Gilbert's legal malpractice claim to their insurer, plaintiff CIC, and that CIC is not barred from asserting this defense to coverage by the doctrines of waiver or estoppel. Therefore, plaintiff's motion for summary judgment will be granted, and defendants' motion for summary judgment will be denied.

AMY BERMAN JACKSON
United States District Judge

DATE:  April 10, 2014